1    WO

2

3

4

5

6    **IN THE UNITED STATES DISTRICT COURT**

7    **FOR THE DISTRICT OF ARIZONA**

8

9    Manuel G. Guerrero,                          No. CV-13-00982-TUC-DTF

10                  Plaintiff,                     **ORDER**

11   v.

12   Carolyn W. Colvin,

13                  Defendant.

14

15          Plaintiff Manuel Guerrero filed this action pursuant to 42 U.S.C. § 405(g) seeking

16   judicial review of a final decision by the Commissioner of Social Security

17   (Commissioner). (Doc. 1.) Before the Court are Guerrero's Opening Brief, Defendant's

18   Opposition to Opening Brief, and Guerrero's Reply. (Docs. 27, 30, 35.) The parties have

19   consented to Magistrate Judge jurisdiction. (Doc. 14.) Based on the pleadings and the

20   administrative record submitted to the Court, this matter is remanded for further

21   proceedings.

22                              **PROCEDURAL HISTORY**

23          Guerrero filed an application for Supplemental Security Income (SSI) on October

24   26, 2009, and for Disability Insurance Benefits (DIB) on November 29, 2010.

25   (Administrative Record (AR) 146, 150.) He alleged disability from March 27, 2002. (AR

26   146, 150.) At a hearing, Guerrero amended the onset date to October 8, 2003. (AR 993.)

27   Guerrero's last date insured was June 30, 2006. (CITE) Guerrero's application for SSI

was denied because his income was too high.[1] (AR 59.) Guerrero's application for DIB was denied upon initial review (AR 54-58, 73-75) and on reconsideration (AR 81-83). A hearing was held on May 17, 2012 (AR 976-1003); at the end of which ALJ Laura Speck Havens concluded she needed additional records and a supplemental hearing with a vocational expert and a medical expert. (AR 999-1001.) A second hearing was held on August 12, 2012. (AR 925-75.) ALJ Havens found, at Step Five, that Guerrero was not disabled. (AR 23-30.) The Appeals Council considered additional evidence and denied Guerrero's request to review the ALJ's decision. (AR 5-6.)

## FACTUAL HISTORY

Guerrero was born on September 1, 1965, making him 43 years of age at the onset date of his alleged disability. (AR 146.) From 1999 to 2002, he was a truck driver. (AR 983.) On March 25, 2002, he injured his back on the job and has not worked since then.

The ALJ found Guerrero had two severe impairments, status post L5-S1 hemilaminectomy and degenerative disc disease of the lumbar spine. (AR 25.) The ALJ concluded Guerrero had the Residual Functional Capacity (RFC) to perform sedentary work, with a limitation to occasional climbing, balancing, stooping, kneeling, crouching and crawling. (AR 26.) Guerrero was found unable to perform any past relevant work. (AR 29.) At Step Five, the ALJ concluded, based on testimony of a Vocational Expert, that Guerrero could perform other work available in the national economy.

## STANDARD OF REVIEW

The Commissioner employs a five-step sequential process to evaluate DIB claims. 20 C.F.R. § 404.1520; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing he (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's RFC precludes him from

---

[1]     In his SSI application, Guerrero reported that he was receiving ongoing worker's compensation payments. (AR 150A.) Guerrero testified, in May 2012, that he was receiving worker's compensation in the amount of $919 per month. (AR 996.) This Court is reviewing solely the denial of DIB benefits; SSI benefits are not part of this appeal.

1   performing his past work. 20 C.F.R. § 404.1520(a)(4). At Step Five, the burden shifts to

2   the Commissioner to show that the claimant has the RFC to perform other work that

3   exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071,

4   1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or

5   "not disabled" at any point in the five-step process, she does not proceed to the next step.

6   20 C.F.R. § 404.1520(a)(4).

7        "The ALJ is responsible for determining credibility, resolving conflicts in medical

8   testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

9   Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings

10  of the Commissioner are meant to be conclusive if supported by substantial evidence. 42

11  U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a

12  preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v.

13  Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to

14  deny benefits only "when the ALJ's findings are based on legal error or are not supported

15  by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033,

16  1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must

17  resolve conflicts in the evidence, and if the evidence can support either outcome, the

18  court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019

19  (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc.

20  Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision,

21  however, "cannot be affirmed simply by isolating a specific quantum of supporting

22  evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v.

23  Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence

24  that supports as well as detracts from the Commissioner's conclusion. *Day v.

25  Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

26                                    **DISCUSSION**

27        The critical issue in this case is when Guerrero became disabled. The ALJ noted

28  that Guerrero was, without question, disabled by 2012 (AR 1000); however, the question

1    is whether he was disabled before his last insured date. Although the Court reviewed the

2    entire record, it focuses on the period between October 8, 2003 (alleged onset date) and

3    June 30, 2006 (last date insured).

4         Guerrero argues the ALJ committed four errors: (1) the ALJ failed to properly

5    weigh the medical evidence and opinions of Guerrero's treating providers; (2) the ALJ

6    erroneously evaluated Guerrero's credibility; (3) the ALJ failed to properly consider lay

7    testimony; and (4) the ALJ's Step Five evaluation was improper.

8         **Treating Providers**

9         Guerrero argues the ALJ should have given more weight to the opinions of

10   medical doctors Gingerich, Berens, Grimes and Hassman, and Francisco Sanchez, PhD.

11        Generally, a treating physician's opinion is afforded more weight than the opinion

12   of an examining physician, and an examining physician's opinion is afforded more

13   weight than a nonexamining or reviewing physician's opinion. *Holohan v. Massanari*,

14   246 F.3d 1195, 1202 (9th Cir. 2001). When there are contradictory medical opinions such

15   as there are in this case, to reject a treating physician's opinion, the ALJ must provide

16   "specific and legitimate reasons that are supported by substantial evidence." *Bayliss v.*

17   *Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

18        Dr. Gingerich

19        On August 1, 2012, Dr. Gingerich opined that, by 2005 and 2006, Guerrero's

20   condition had deteriorated and he was experiencing severe lumbar pain, limitation of

21   motion, spasm, and difficulties in sitting, standing and walking. (AR 875.) In those years,

22   Dr. Gingerich concluded that Guerrero could not lift over 5-8 pounds, twist, kneel, climb,

23   bend, stoop or do repetitive movement. (*Id.*) He opined that Guerrero was not capable of

24   sustained activity, as it would result in him going on bed rest. (*Id.*) After the ALJ issued

25   his decision, Dr. Gingerich wrote an additional opinion that was considered by the

26   Appeals Council.[2] (AR 4-6.) In this opinion, Dr. Gingerich summarized Guerrero's

27

28        [2]    "[W]hen the Appeals Council considers new evidence in deciding whether
     to review a decision of the ALJ, that evidence becomes part of the administrative record,
     which the district court must consider when reviewing the Commissioner's decision for

1    records from 2005 through early 2007. He reported that very limited activity would

2    aggravate Guerrero's back and he needed monthly injections just to maintain activities of

3    daily living. (AR 923-24.) He then stated that, from late in 2005, Guerrero would have

4    missed 3 to 5 days of work per month due to pain. (AR 924.)

5         The ALJ gave Dr. Gingerich's opinion reduced weight, finding it not well

6    supported by the objective medical evidence. (AR 28.) The ALJ stated that the treating

7    notes indicated Guerrero had improved daily functioning with pain medication and

8    injections. (*Id.*) Additionally, the physical examinations remained consistent in the period

9    before his insurance expired. The ALJ concluded that the records indicated Guerrero's

10   condition worsened several years after his insurance expired, which was contrary to the

11   doctor's opinion that Guerrero deteriorated in 2005 and 2006.

12        First, the Court looks at the ALJ's finding that Guerrero had improved daily

13   functioning with treatment. Review of the record reveals that treatment lessened

14   Guerrero's pain, but it went up and down over the relevant period. From the time

15   Guerrero began seeing Dr. Gingerich in October 2003, to January 2005, the records

16   indicate progress towards pain control with progressive increases in medication. (AR

17   559, 561, 563, 565, 567, 569, 571, 574, 576, 578, 580, 584, 586, 588, 590, 592, 594.)

18   This comports with the ALJ's summary of that evidence. (AR 27.) However, the ALJ's

19   characterization that Guerrero had "good" pain control in the subsequent years (AR 27) is

20   not supported by substantial evidence. The ALJ cited eight of Dr. Gingerich's records

21   from the period February 17, 2005, to November 23, 2005. (AR 27 (citing AR 519, 537,

22   539, 541, 543, 547, 555, 557).) In five of those records, Guerrero reported having had a

23   good month (AR 519, 537, 539, 541, 543) but, at three appointments, he reported a bad

24   month, "excruciating pain" and "growing pain" (AR 547, 555, 557). The ALJ did not

25   acknowledge three other records from Dr. Gingerich during the same time period that

26   documented a very bad month (5/4/05), upper and lower back pain (5/25/05), and daily

27

28   substantial evidence." *See Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th
     Cir. 2012).

1   pain that is worse at night (8/10/05). (AR 545, 551, 553.) During this period, the records

2   are nearly evenly split between appointments when Guerrero's pain was well-controlled

3   and those when it was not. This remained true through June 30, 2006, his date last

4   insured. (AR 523, 525, 527, 529, 531, 533, 535.)

5          Missing from the ALJ's assessment is Guerrero's baseline during the relevant time

6   period. There is no context to the ALJ's finding that Guerrero's daily functioning

7   improved. And, there is no support for a conclusion that, after 2005, any reported

8   improvement was not merely temporary. In other words, during the intermittent months

9   when Guerrero reported improved functioning, there is no evidence he was able to do

10  more activity than during any prior period when he reported improvement in his activity

11  level. Rather, Guerrero appeared to alternate between growing pain that inhibited

12  functioning and periods when the pain lessened and allowed more activity. There is no

13  question that treatment helped manage Guerrero's level of pain, but there is no evidence

14  in the record that he could sustain any significant activity. As explained by Dr. Gingerich,

15  "[i]t should be understood that this patient had a failed back syndrome and for him a good

16  month meant he did not have to spend his time lying in bed with ice or heat." (AR 923.)

17         The ALJ also relied upon the fact that Dr. Gingerich's findings of tenderness of

18  the lumbar paraspinous muscle groups and the sacroiliac joint line were consistent during

19  this time. (AR 28.) Dr. Gingerich noted tenderness in the same areas on Guerrero's back

20  consistently from 2003 to 2009. However, Dr. Gingerich sometimes noted simply

21  tenderness, while other times it was moderate or exquisite tenderness. (AR 235, 485-99,

22  505-21, 525-49, 553-71, 574-594, 756, 766-71, 775-86, 792-98.) Thus, this symptom was

23  not at a consistent level for years, it varied during this period. Further, the fact that one

24  symptom remains constant does not preclude another symptom from changing, or being

25  severe, during the same period. Review of the above-cited records reveals that the level

26  of tenderness did not always directly correlate to Guerrero's reported pain level. Dr.

27  Gingerich noted that even when things were going well for Guerrero he had significant

28  tenderness and required injections. (AR 923.)

Finally, the ALJ rejected Dr. Gingerich's opinion that Guerrero's condition worsened in 2005 and 2006. She found this was contradicted by other evidence, which revealed Guerrero's treatment remained consistent through the insured period and that he deteriorated in 2010 and the following years. (AR 27, 28.) There is no question that, by 2010, Guerrero was experiencing higher levels of pain than before and Dr. Gingerich's treatment was less effective. However, deterioration in one period of time does not preclude an earlier downturn in a person's condition. Dr. Gingerich focused his opinions on the period up to 2006, as he evidently was asked to do. (AR 875, 923.) He did not evaluate Guerrero's entire continuum or contrast 2005/2006 with 2010 and later. As discussed above, the records indicate that in the first year or more of treatment with Dr. Gingerich, Guerrero was improving with periodic increases in medication (although he experienced setbacks). January 2005, when Guerrero considered a return to work (AR 559), appears to be the pinnacle of treatment success. Guerrero did not mention trying to work again. Subsequently, his pain and other symptoms went up and down, but he was no longer on an upward trajectory. (*See* AR 924 (Dr. Gingerich stated there was no long-term improvement beyond 2005).) In sum, the fact that Guerrero's condition worsened after his insured period expired has little bearing on Dr. Gingerich's opinion regarding Guerrero's ability to work in 2005 and 2006.

The Court finds the ALJ did not provide specific legitimate reasons, supported by substantial evidence, to discount Dr. Gingerich's opinion.[3]

Drs. Berens, Grimes and Hassman

On November 3, 2010, Dr. Berens, a treating physician, stated that Guerrero was unable to work secondary to pain extending into both lower extremities, and that his pain

---

[3]     Defendant notes multiple times in her opposition brief that Dr. Gingerich's opinion was issued after Guerrero's insurance expired. The ALJ did not rely on the fact that it was a retrospective opinion. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (requiring courts to review only reasons relied upon by the ALJ). And, retrospective opinions should not be discounted solely on that basis. *Smith v. Bowen,* 849 F.2d 1222, 1225 (9th Cir.1988) ("[M]edical reports are inevitably rendered retrospectively."). In this case, Dr. Gingerich treated Guerrero throughout the entire relevant period (from alleged onset through expiration of insured status) and up through the time he wrote his opinions.

had objective support and was not out of range for the pathology. (AR 815.) The ALJ did not mention this opinion in his decision.

Guerrero first saw Dr. Berens in February 2008, for an epidural injection. (AR 886-87.) Thus, Dr. Berens did not begin treating Guerrero until after his last date of insurance and did not purport to offer an opinion relevant to the time period at issue. However, "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." *Lester v. Chater,* 81 F.3d 821, 832 (9th Cir.1995) (quoting *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988)). The ALJ should have discussed Dr. Berens's opinion. The Court does not find persuasive Defendant's contention that the ALJ "considered" Dr. Berens by referencing a surgical referral in the treatment records. The ALJ erred in not acknowledging the opinion evidence provided by Dr. Berens.

Guerrero argues the ALJ failed to consider Drs. Grimes and Hassman. On April 16, 2001, Dr. Grimes, an independent medical examiner hired by Guerrero's worker's compensation carrier, determined that Guerrero had an 11% impairment in his left arm and was restricted from repetitive and continual overhead use of that limb. (AR 355.) On October 30, 2001, Dr. Hassman noted decreased range of motion, weakness, and chronic pain in Guerrero's left shoulder and cleared him to lift five pounds or less with his left arm. (AR 225.)

The ALJ did not mention these doctors' opinions in his decision. Defendant contends their opinions have no bearing on the relevant time period, during which Guerrero did not report shoulder problems and an x-ray showed the left shoulder as normal. Actually, even years later, in 2010, examining physician Richard Petronella documented painful range of motion in Guerrero's left shoulder (although normal strength). (AR 605.) Guerrero testified before the ALJ that, since his 1999 injury, he had permanent loss of strength in his left arm and could not raise it above neck level. (AR 994-95.) It was the ALJ's role to consider the opinions of Drs. Grimes and Hassman and provide reasoning for the weight she gave them. She failed to do so. There is no question

that Guerrero returned to work after the shoulder injury, thus, it was not in itself a disabling condition. However, if he is precluded from certain activities due to a chronic shoulder condition, the ALJ should have considered that in assessing Guerrero's RFC.

Standing alone, the ALJ's error with respect to these three doctor's opinions might be harmless. However, because the Court identifies other errors requiring remand, a finding of harmlessness will not expedite the case.

Francisco Sanchez, PhD

On April 22, 2011, Guerrero was examined by psychologist Francisco Sanchez. He opined that Guerrero had depression NOS, but was not significantly limited by psychological factors. (AR 848-53.) The ALJ gave limited weight to Dr. Sanchez's opinion regarding depression because Guerrero had received no treatment for any psychological symptoms. (AR 28.)

Guerrero does not contend the ALJ should have given any weight to Dr. Sanchez's diagnosis of depression. Rather, he contends the ALJ should have given weight to Dr. Sanchez's opinion that Guerrero had substantial pain and difficulty functioning. Dr. Sanchez observed that Guerrero appeared to be uncomfortable and in pain during the exam. (AR 850, 852.) However, he provided no opinion on Guerrero's physical limitations. This general observation by Dr. Sanchez is not an opinion the ALJ was required to consider. *See Harrelson v. Astrue*, 273 F. App'x 632, 634 (9th Cir. 2008) (finding a physician's statement that impairment is "significantly disabling," with no functional limitations, not an opinion requiring consideration). Further, Dr. Sanchez examined Guerrero relative to his mental health not his physical condition. The ALJ was not required to give any weight to a psychologist's opinion on physical impairments. *See, e.g., Buxton v. Halter,* 246 F.3d 762, 775 (6th Cir. 2001) (psychologist not qualified to opine regarding disability based on physical conditions); *Brosnahan v. Barnhart,* 336 F.3d 671, 676 (8th Cir. 2003) (psychologist opinion discounted, in part, because it was based on consideration of physical impairments outside her area of expertise).

1    <u>Conclusion</u>

2        The ALJ erred in her rejection of the opinion of Dr. Gingerich, and her failure to

3    consider the opinions of Drs. Berens, Grimes and Hassman. The Court finds no error with

4    respect to the ALJ's treatment of Dr. Sanchez.

5        **Credibility**

6        Guerrero challenges the ALJ's finding on his credibility regarding his symptoms.

7    Guerrero testified that, during the relevant time period, family members would help him

8    dress and bathe because he could not stoop (AR 986); he could not do other household

9    chores but would prepare some food (AR 987-88); he watched television and could lay

10   down but laying totally flat was painful (AR 987-88); he could not drive due to his

11   medication (AR 989); he could sit or stand for 10 to 15 minutes but walking caused

12   significant back pain (AR 990-91); he began using a cane in 2003 (AR 991); and he was

13   limited to lifting 5 pounds (AR 991).

14       The ALJ found that Guerrero's testimony was not fully credible. Specifically, he

15   mentioned Guerrero's statements that he could not work due to severe, chronic back pain,

16   and was neither able to perform self-care nor assist with household chores. The ALJ

17   noted several factors in making his credibility finding: Guerrero spent time watching

18   television and was able to drive; his mood and functioning improved with treatment; he

19   was considering employment; use of a cane was not consistently observed; and his

20   statements were not fully corroborated by objective medical evidence.

21       In general, "questions of credibility and resolution of conflicts in the testimony are

22   functions solely" for the ALJ. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007)

23   (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). However, "[w]hile an

24   ALJ may certainly find testimony not credible and disregard it . . . [the court] cannot

25   affirm such a determination unless it is supported by specific findings and reasoning."

26   *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884-85 (9th Cir. 2006); *Bunnell v. Sullivan*,

27   947 F.2d 341, 345-346 (9th Cir. 1995) (requiring specificity to ensure a reviewing court

28   the ALJ did not arbitrarily reject a claimant's subjective testimony); SSR 96-7p. "To

determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

"First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell*, 947 F.2d at 344). ALJ Havens found Guerrero had satisfied part one of the test by proving an impairment that could produce the symptoms alleged. (AR 26.) Second, if "there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283-84 (9th Cir. 1996)).

Defendant argues that there was evidence of malingering in the record. Defendant relies on the case of *Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010). In *Berry*, the ALJ made a finding that the claimant was malingering but, here, ALJ Havens made no such finding.[4] Therefore, to support her discounting of Guerrero's assertions regarding the severity of his symptoms, the ALJ had to provide clear and convincing, specific reasons. *See Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) (ALJ must either find evidence of malingering or provide clear and convincing reasons to reject claimant's testimony); *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

First, the ALJ cited Guerrero's activities of daily living as a reason to discount his credibility. Specifically, he noted that Guerrero watched television, could drive, and that his mood and functioning improved with treatment. Critically, "the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.

---

[4]    State agency physician Martha Goodrich found Guerrero was malingering and concluded his impairments were non-severe. (AR 616.) The ALJ rejected her opinion because the record supported the existence of a severe impairment. (AR 27-28.)

2001). However, if a claimant's activities contradict his testimony, or the claimant spends a substantial portion of his day at activities that involve skills transferable to a work setting, those circumstances can form the basis for an adverse credibility determination. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ did not find, and the record does not reveal, that Guerrero's activity level was contrary to his testimony. Watching television is certainly not a skill transferable to the work place, and there was nothing about that acknowledged activity that discredits Guerrero. Contrary to the ALJ's finding, Guerrero testified that he was not able to drive due to his prescribed medication.[5] (AR 989.) Thus, Guerrero's physical ability to drive any distance is unconfirmed and it is not a transferable job skill because his medication prevents him for driving.

Next, the ALJ cites three records to support his finding that with treatment Guerrero's functioning improved. On September 29, 2004, Guerrero's wife reported "that he is also in a better mood and more active around the house." (AR 567.) His wife's report was similar the following month, "he is doing more things at home and is in a better mood." (AR 565.) Two years later, on December 6, 2006, Guerrero reported that he could "maintain his activities at a higher level." (AR 513.) These reports by Guerrero and his wife are quite generic, an "increase" in activity provides almost no information. If Guerrero's baseline was to do no household activity but at times he was able to do some, that does not undermine his testimony that he did not do household chores with regularity and needed help with self-care. Further, the records cited do not provide a holistic picture because Guerrero reported fluctuations in his pain and activity level. In November 2003, Guerrero reported progress and increased functioning at home (AR 592); in April 2004, Guerrero reported having a very bad month for pain and was leaning heavily on a cane (AR 580); September and November 2004, Guerrero reported increased pain (AR 571, 563); December 2004 and January 2005, were very good months with better activity (AR 559, 561); February, March, and May 2005, Guerrero reported bad pain (AR 553, 555,

---

[5]   In response to a question, Guerrero testified that he "could" drive a car but almost all of the time he was not allowed to due to his medication. (AR 989.)

557); however, in April and June, Guerrero reported decent months (AR 519, 655); in July 2005, Dr. Gingerich noted that Guerrero's pain was growing and limiting his activities (AR 547); in February 2006, Guerrero again mentioned an increase in activities (AR 531); but, in September 2006, cleaning the patio caused a back injury (AR 517). The three records cited by the ALJ are not clear and convincing evidence of activities transferrable to the workplace or of an activity level contrary to Guerrero's testimony. Additionally, Guerrero maintained regular medical appointments over the many years covered by the record; thus, failure to maintain improvement was not due to lack of treatment.

Second, the ALJ cites the fact that Guerrero considered employment or retraining. In support of this, the ALJ cites a record from January 2005. (AR 559.) This was one day during a relevant period of more than three years, and it appears to be the best Guerrero felt during the entirety of that time span. Even a failed attempt to work is not a clear and convincing reason to find a claimant incredible. *See Lingenfelter*, 504 F.3d at 1038-39. Significant is the fact that Guerrero expressed a desire to return to work but never did so. A claimant should not be penalized for believing he might be able to, or desiring to, work. This finding is supported by the regulations, which allow a recipient of disability benefits to work on a trial basis for up to nine months without affecting his disability status. 20 C.F.R. § 404.1592. An ALJ is evaluating whether a claimant can work on a sustained basis, 20 C.F.R. § 1512(a), and "[o]ccasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability." *Lester*, 81 F.3d at 833. Guerrero's one-time expression that he was considering re-training is not a clear and convincing reason to discount his credibility.

Third, the ALJ noted that the record referenced "instances" of Guerrero using a cane. He then contrasted that with the fact that Guerrero was not observed using a cane consistently. In support, the ALJ cited a March 31, 2010 surveillance report. (AR 613.) An investigator went to Guerrero's door and inquired about a car for sale in the driveway. (*Id.*) During the interaction, Guerrero was observed to walk without problem or the aid of

an assistive device. (*Id.*) There is no inherent contradiction between the two ideas the ALJ set in juxtaposition of one another. The fact that the record documented instances of the use of a cane is consistent with Guerrero using a cane some of the time. Surveillance on a single day on which Guerrero did not use a cane is also in line with the remainder of the record. Most critically, neither Guerrero nor anyone else testified that he required a cane at all times. Guerrero merely testified that he began using a cane in 2003, and the ALJ asked no further questions on the topic although the surveillance report had been completed two years prior to the hearing. (AR 991.) This is not a clear and convincing reason to discount Guerrero's testimony.

Finally, the ALJ found that Guerrero's statements were not fully corroborated by objective medical evidence. If the objective medical evidence fully explained a claimant's symptoms then credibility would be irrelevant. Credibility factors into the ALJ's decision only when the claimant's stated symptoms are not substantiated by the objective medical evidence. SSR 96-7p. Thus, it is error for an ALJ to discount credibility solely because a claimant's symptoms are not substantiated by the medical evidence. *Id.*; *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). As this is the only basis remaining for the ALJ's credibility finding, it is insufficient to sustain it.

**Lay Testimony**

Guerrero argues the ALJ ignored evidence from PA Brown and reports from physical therapists, which establish that Guerrero had weakness and functional problems. An ALJ is required to consider lay testimony on a claimant's limitations and how they impact his ability to work. *Stout v. Comm'r Soc. Sec. Admin.* 454 F.3d 1050, 1056 (9th Cir. 2006). Rejection of such testimony requires an ALJ to provide reasons germane to each witness. *Id.*

Some of the records cited by Guerrero are not lay evidence and/or are not relevant. Guerrero cites a January 28, 2003 appointment record from his primary care doctor, Dr. Nguyen, which is not a lay opinion. (AR 636.) He also cites a March 17, 2005 physical therapy evaluation, related solely to a Bell's palsy on the left side of his face. (AR 683.)

This issue is irrelevant to the ALJ's disability determination. (*Id.*) The January 14, 2003 physical therapy evaluation also is not relevant as it contains no opinion on Guerrero's symptoms or ability to work. It is solely a summary of Guerrero's report on his current status. (AR 677.) The document states, "pt understands it's unlikely he can return to same type of work." (*Id.*) Again, this does not reflect the therapist's opinion based on an exam, it is merely a recitation of information provided by Guerrero.

The final document cited by Guerrero is an appointment record from July 2004, completed by PA Brown. (AR 279-80.) PA Brown noted limited movement of the lumbosacral spine due to discomfort, motor loss bilaterally in the lower extremities (3/5), slightly ataxic gate, and use of a cane. (*Id.*) The ALJ mentioned this treatment record only as to Guerrero using a cane and walking with an ataxic gait. (AR 27.) The ALJ gave little deference to these findings, determining that they were in conflict with the regular examinations of Dr. Gingerich during this period. (*Id.*) The ALJ also noted that the record did not demonstrate consistent use of a cane. (*Id.*)

Guerrero's use of a cane is documented on other dates by Dr. Gingerich, although the record does not evidence daily use of a cane. In October 2003 and April 2004, Dr. Gingerich noted that Guerrero was using a cane. (AR 235, 580.) In May 2005, Dr. Gingerich attributed Guerrero's current back pain (upper and lower) to postural changes and use of a cane. (AR 551.) PA Brown's finding of an ataxic gait is not contradicted by Dr. Gingerich. Guerrero's monthly appointments with Dr. Gingerich did not include neurologic exams or a discussion of Guerrero's gait. Thus, Dr. Gingerich's treatment notes do not contradict PA Brown's July 2014 findings on the use of a cane or an ataxic gait. In fact, Dr. Gingerich's initial October 2003 exam, confirms other findings by PA Brown not mentioned by the ALJ (discomfort in the lumbosacral spine and bilateral motor loss in the lower extremity). Dr. Gingerich found tenderness in the SI joint line and the right margin of the coccyx and bilateral weakness in the lower extremities (hip flexors, quadriceps and calves). (AR 235.) Further, in his August 2012 opinion, Dr. Gingerich relied upon the July 2004 records from PA Brown as confirmation for his

similar findings. (AR 875.) The ALJ failed to provide germane reasons to reject PA Brown's findings regarding the use of a cane and Guerrero's ataxic gait, and failed to provide any reason for ignoring his other findings.

**Step Five**

Guerrero argues the ALJ erred at Step Five because she did not include all of his impairments in the hypotheticals to the vocational expert. Because the Court remands this case for further proceedings, it need not evaluate this claim.

## CONCLUSION

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). When a court finds that an administrative decision is flawed, the remedy should generally be remand for "additional investigation or explanation." *INS v. Ventura*, 537 U.S. 12, 16 (2006) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004). However, a district court should credit as true medical opinions and claimant symptom testimony that was improperly rejected by the ALJ and remand for benefits if:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the testimony; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004); *Garrison v. Colvin*, 759 F.3d at 1021 (finding credit as true mandatory unless there are serious doubts that the claimant is disabled).

Here, the Court found the ALJ improperly rejected medical opinions and Guerrero's symptom testimony. However, credit as true is not warranted because there remains the outstanding issue of the onset date of Guerrero's disability. *See Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1300 (9th Cir. 1999); *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010) (finding remand for further proceedings appropriate when crediting the evidence would not identify the onset date). The Court emphasized

above that the onset date was the critical issue in this case, and it is not resolved by applying the credit-as-true rule. Guerrero was asked to testify about his abilities over the whole period of 2002 to 2006. (AR 985-995.) But, Dr. Gingerich identified limitations that he tied to originating in the second half of 2005. Therefore, even crediting the testimony of Guerrero and the opinion of Dr. Gingerich, the onset date is not evident. R*egennitter* instructs the Court to "remand this case to the Commissioner for resolution of [the disability onset date issue], and for an ultimate disposition consistent with this [determination]." 166 F.3d at 1300. In reviewing Guerrero's case upon remand, the ALJ should re-examine all the evidence this Court found to have been improperly discounted.

Accordingly,

**IT IS ORDERED** that this case is remanded to the ALJ for a new hearing and further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court should enter judgment and close this case.

Dated this 27th day of March, 2015.


D. Thomas Ferraro
United States Magistrate Judge